# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JOSEPH PRADO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 05-256-C-LMB |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| POTLATCH CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

Currently pending before the Court is Plaintiff's Motion for Leave to Amend Complaint

(Docket No. 15).[1]  Having carefully reviewed the record, considered oral arguments, and

otherwise being fully advised, the Court enters the following Order.

## I.

## BACKGROUND

On September 1, 2004, Potlatch Corporation ("Defendant") hired Joseph Prado

("Plaintiff") as an hourly employee in the Clearwater Wood Products Division ("CWPD").

*Standerfer Affidavit*, ¶¶ 2, 10 (Docket No. 17, Att. 1).  According to company policy, Plaintiff

was to be on probationary status until November 1, 2004.  *Id*. at ¶ 10.

It is Defendant's policy that "[p]robationary employees may be discharged for any non-

discriminatory reason."  *Article III, Hiring, Suspension and Discharge*, *Exhibit A to Standerfer*

---

[1] Also pending before the Court is Defendant's Motion for Order for Physical Examination (Docket No. 23), which is not yet ripe.  Therefore, this motion will be addressed at a later date.

**ORDER -1-**

*Affidavit*, p. 7 (Docket No. 17, Att 1).  Additionally, Defendant's workplace rules state

> **Employees are required to immediately report the following to their supervisor** (or any supervisor, in the event their immediate supervisor cannot be located).  Failure to do so may result in disciplinary action, up to and including termination.  If you have any questions at any time, STOP and get a supervisor.
>
> - Near misses
> - Incidents
> - Accidents
> - Unsafe equipment
> - Unsafe work areas
> - Unsafe machinery
> - Unsafe tools or other equipment

*Clearwater Wood Products Hourly Bargaining Unit Employee Handbook*, *Exhibit B to Standerfer Affidavit*, p. 8 (Docket No. 17, Att. 1).

On Monday, October 25, 2004, Plaintiff, who was scheduled to work at CWPD, called a supervisor, Dave Vallient, and reportedly told him that he had hurt his arm at work the previous week and would not be coming in.  *Standerfer Affidavit*, ¶ 11 (Docket No. 17, Att. 1).  Later that day, Plaintiff met with Denise Metz, his direct supervisor, and, according to Dan Standerfer, personnel manager for the CWPD, Plaintiff told her that he had hurt his shoulder at work the previous week, that it had been hurting for several days, and that he took ibuprofen and thought it would improve.  *Id*. at ¶ 12.  When Ms. Metz asked Plaintiff why he had not immediately reported the problem, Plaintiff explained he had not reported it because he thought his shoulder would get better over the weekend.  *Id*.

The same day, at Defendant's direction and request, Plaintiff signed the following statement:

> Wed. afternoon, after lunch sometime, worked # 12, # 14 & bundling on # 7 maybe, started to be somewhat uncomfortab[le.] Did not bother me to move.  Took Ibuprofin [sic] Friday before I came to work and a couple

**ORDER -2-**

during work, kept moving it around.  Friday after work it would not quit
aching and noticed that I could not squeeze my hand.  I thought it would
quit hurting over the weekend.

*Oct. 25, 2004, Statement*, *Exhibit C to Standerfer Affidavit*, p. 10 (Docket No. 17, Att. 1).

Also on Monday, October 25, 2006, a Workers Compensation First Report of Injury or
Illness form was completed by Dave Waggener, the CWPD Safety Coordinator.  *Standerfer
Affidavit*, ¶ 14 (Docket No. 17, Att. 1).  The Workers Compensation Form indicates, in regard to
the "occurrence," that the "Date of Injury or Illness" was October 20, 2004, and that the "Time
Occurred" was 12:00 PM.  *Workers Compensation - First Report of Injury or Illness Form*,
*Exhibit A to Plaintiff's Motion to Amend*, p. 7 (Docket No. 15).  However, where the form asks
"Did Injury/Illness Exposure Occur on Employer's Premises?" the answer noted is "Unknown."
*Id*.  The form also notes that Plaintiff had "stated that nothing particular happened; didn't feel
anything or pull anything heavy."  *Id*.

Plaintiff was referred to Donald J. Greggain, M.D. by Potlatch.  His notes indicate that
Plaintiff's chief complaint was right shoulder or elbow pain "that started bothering him since
starting work in early Sept.  Now much worse since Friday."  *Oct. 26, 2004, Greggain Notes*,
*Exhibit A to Stromberg Affidavit*, p. 3 (Docket No. 17, Att. 2).  Dr. Greggain also notes that
Plaintiff "[d]oes not recall any injury or specific time when the pain was aggravated, just
generally worse as time and work went on."  *Id*.

On October 27, 2004, Plaintiff was discharged.  *Standerfer Affidavit*, ¶ 16 (Docket No.
17, Att. 1).  Allegedly, Bill Highsmith, the Plant Manager, and Dan Standerfer, the Personnel
Manager for Defendant's CWPD, had determined that "because Mr. Prado was a probationary
employee and because he had intentionally failed to report a perceived workplace injury in
violation of CWPD's rules, he should be discharged."  *Id*. at ¶ 15.  Plaintiff had not had negative

**ORDER -3-**

employment reviews prior to his firing. *See Clearwater Lumber Evaluations*, *Exhibit C to Plaintiff's Motion to Amend*, pp. 9–15 (Docket No. 15).

Two weeks after Plaintiff's discharge, Dr. Greggain informed CWPD that Plaintiff's newly-diagnosed disc extrusion at C5-6 was not work related. *Standerfer Affidavit*, ¶ 17 (Docket No. 17, Att. 1); *Nov. 16, 2004, Greggain Notes*, *Exhibit A to Stromberg Affidavit*, p. 5 (Docket No. 17, Att. 2). Dr. Greggain also asked that CWPD reconsider the decision to terminate Plaintiff. *Email from D. Greggain to D. Waggener*, *Exhibit D to Plaintiff's Motion to Amend*, p. 16 (Docket No. 15). Similar appeals were made by Plaintiff's counsel. *Jan. 26, 2005, Letter from K. Nagy to D. Standerfer*, *Exhibit F to Plaintiff's Motion to Amend*, pp. 18–19 (Docket No. 15); *Feb. 14, 2005, Letter from K. Nagy to M. McNichols*, *Exhibit H to Plaintiff's Motion to Amend*, pp. 21–22 (Docket No. 15). Notwithstanding all the requests, Defendant did not reinstate Plaintiff, asserting that "Potlatch was fully justified in discharging" Plaintiff. *Feb. 23, 2005, Letter from M. McNichols to K. Nagy*, *Exhibit I to Plaintiff's Motion to Amend*, p. 23 (Docket No. 15).

On May 20, 2005, Plaintiff filed the instant action in state court, claiming that Defendant had wrongfully terminated him, had breached an implied contract, and breached the covenant of good faith and fair dealing. *Verified Complaint and Demand for Jury Trial*, pp. 6–12 (Docket No. 1). Plaintiff alleges the reason Defendant gave for firing him, i.e., that Plaintiff had failed to immediately report a perceived on-the-job injury, was a pretext. *See, e.g.*, *id.* at ¶ 14. Plaintiff asserts that he was really fired because he reported a possible on-the-job injury and filed for worker's compensation benefits, and in so doing, Defendant violated public policy. *Id.*

**ORDER -4-**

On June 27, 2005, Defendant filed a notice of removal to federal district court.  *Notice of Removal*, p. 1 (Docket No. 1).  Plaintiff now seeks to amend his complaint to add a claim for punitive damages.  *Plaintiff's Motion for Leave to Amend Complaint*, p. 2 (Docket No. 15).

## II.

### MOTION TO AMEND TO ASSERT PUNITIVE DAMAGES

On January 23, 2006, Plaintiff filed his motion, pursuant to Idaho Code § 6-1604, for leave to amend his complaint to assert a claim for punitive damages.  *Plaintiff's Motion for Leave to Amend Complaint* (Docket No. 15).  A hearing, as contemplated by Idaho statute, was held on April 24, 2006, at the United States Courthouse in Moscow, Idaho.

Whether to permit a claim for punitive damages is a substantive issue; therefore, in the instant action, in which the Court is exercising diversity jurisdiction, Idaho law governs.  *Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005).  Under Idaho law, a party may seek punitive damages only with leave of the Court.  Idaho Code § 6-1604(2).

Idaho Code § 6-1604 provides as follows:

> (2) In all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages.  However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages.  The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

Idaho Code § 6-1604(2) (2005).  As to the showing necessary at trial to support an award of punitive damages, the section also states,

> (1) In any action seeking recovery of punitive damages, the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious

ORDER -5-

or outrageous conduct by the party against whom the claim for punitive
damages is asserted.

Idaho Code § 6-1604(1) (2005).  In addition, in Idaho, punitive damages may be recovered

against a corporation only if "an officer or director participated in, or ratified, the conduct

underlying the punitive damage award." *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416,

430–31, 95 P.3d 34, 48–49 (2004) (citations omitted).

As a matter of substantive law, it is well established in Idaho that punitive damages are

not favored and should be awarded only in the most unusual and compelling circumstances, and

are to be awarded cautiously and within narrow limits.  *Manning v. Twin Falls Clinic & Hosp.,

Inc.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992) (citing *Jones v. Panhandle Distribs., Inc.*,

117 Idaho 750, 792 P.2d 315 (1990); *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 726 P.2d

706 (1986); *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *Linscott v.

Rainier Nat'l Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980); *Hatfield v. Max Rouse & Sons

Nw.*, 100 Idaho 840, 606 P.2d 944 (1980)); *see also O'Neil v. Vasseur*, 118 Idaho 257, 265, 796

P.2d 134, 142 (Ct. App. 1990).  Therefore, when the moving party's claims are reasonably

disputed and there is substantial evidence that supports the non-moving party's claims, a motion

to amend to assert punitive damages will not be allowed.  *See Strong*, 393 F. Supp. 2d at 1026

(finding the plaintiff had not established a reasonable likelihood of proving by a preponderance

of the evidence "the requisite 'extremely harmful state of mind' and 'extreme deviation from

reasonable standards'" because the cause of the plaintiff's disability, which was in issue, was

"reasonably disputed and there [wa]s substantial medical evidence that support[ed] a conclusion

that [the plaintiff] suffers from a sickness") (citing *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1187 (9th Cir. 2004)).[2]

The Idaho state courts have also made it clear, with respect to punitive damages claims, that the decision whether to submit the question to a jury rests within the sound discretion of the trial court. *Manning*, 830 P.2d at 1190 (citing *Hoglan v. First Sec. Bank*, 120 Idaho 682, 819 P.2d 100 (1991); *Eddins Constr., Inc. v. Bernard*, 119 Idaho 340, 806 P.2d 433 (1991); *Soria*, 111 Idaho 594, 726 P.2d 706). In this respect, the federal courts are in accord with Idaho state substantive and procedural law. *Forman v. Davis*, 371 U.S. 178 (1962).

Under controlling Idaho law, an award of punitive damages will be allowed only when the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Manning*, 122 Idaho at 52, 830 P.2d at 1190 (quoting *Cheney*, 104 Idaho at 905, 665 P.2d at 669). Further, the Supreme Court of Idaho has clearly defined the parameters of such an award and has consistently held that the "justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence'; 'malice, oppression, wantonness'; or simply 'deliberate or willful.'" *Manning*, 122 Idaho at 52, 830 P.2d at 1190 (citing *Cheney*, 104 Idaho at 905, 665 P.2d at 669).

---

[2] *Strong* involved the "preponderance of the evidence" standard required in Idaho Code § 6-1604 before its amendment in 2003. Section 6-1604 now places a higher burden on the moving party, i.e., a requirement for "clear and convincing evidence." *See also* BLACK'S LAW DICTIONARY 596 (8th ed. 2004) ("**clear and convincing evidence.** . . . This is a greater burden than preponderance of the evidence . . . ."). Therefore, the *Strong* standard remains applicable. That is, if the moving party's claims are reasonably disputed and there is substantial evidence that support's the non-moving parties claims, the moving party has not met the "preponderance of the evidence" standard; therefore, the moving party has also not met the more stringent "clear and convincing evidence" standard.

ORDER -7-

Accordingly, though Federal Rule of Civil Procedure 15(a) encourages the liberal granting of motions to amend pleadings, due to the strict conditions precedent to and the disfavor of punitive damages, the Court will allow Plaintiff to amend his complaint to assert a claim for punitive damages only if, after weighing the evidence presented, the Court concludes that Plaintiff has established a reasonable likelihood of proving, by clear and convincing evidence, that Defendant's conduct was oppressive, fraudulent, malicious, or outrageous.  *See Vendelin*, 140 Idaho at 423, 95 P.3d at 41.  The amendment will not be allowed if there is substantial evidence that supports a conclusion that Defendant did indeed terminate Plaintiff's employment without violating public policy, i.e., terminated Plaintiff for a reason other than that Plaintiff filed for worker's compensation benefits, and that Defendant did not act with an extremely harmful state of mind or in extreme deviation to reasonable standards in deciding not to rehire Plaintiff.  *See Strong*, 393 F. Supp. 2d at 1026 (citing *Kuntz*, 385 F.3d at 1187).

In support of his motion to amend, Plaintiff alleges Defendant engaged in the following acts and contends that, by so acting, Defendant's conduct was malicious, oppressive, or outrageous enough to warrant an award of punitive damages: (1) Defendant fired Plaintiff for applying for worker's compensation benefits, which, in and of itself, rises to the level of outrageousness required by Idaho Code § 6-1604, *Plaintiff's Motion to Amend*, pp. 2–3 (Docket No. 15); (2) Defendant fired Plaintiff for breaking a workplace rule he never actually broke because Plaintiff's injury turned out to be non-work related; therefore, there was no *workplace injury* for Plaintiff to have failed to immediately report, *see id.* at pp. 4–5; and (3) Defendant failed to rehire Plaintiff even though he never violated a workplace rule, *id*. at p. 5.

**A.**     <u>**Firing Plaintiff for Filing a Worker's Compensation Claim**</u>

In addressing Plaintiff's first contention, the Court must weigh the evidence to determine (1) whether Plaintiff showed that he has a reasonable likelihood of proving by clear and convincing evidence at trial that Defendant terminated Plaintiff's employment because Plaintiff applied for worker's compensation benefits and not because he failed to immediately report a perceived on-the-job injury, and (2) if so, whether Defendant's conduct in terminating Plaintiff for that reason was oppressive, fraudulent, malicious, or outrageous, by it deciding to terminate Plaintiff's employment in an extremely harmful state of mind or in extreme deviation of reasonable standards.

The record contains substantial evidence supporting Defendant's position that its reason at the time it terminated Plaintiff's employment was its belief that Plaintiff had broken a workplace rule by failing to immediately report a perceived on-the-job injury.  A careful review of the record makes it clear that the circumstances relating to the termination are not clear.  For example, the record contains the affidavit of CWPD Personnel Manager, Dan Standerfer, who reported that (1) on October 25, 2004, Plaintiff allegedly told a supervisor, Dave Vallient, "that he had hurt his arm at work *the previous week*," *Standerfer Affidavit*, ¶ 11 (Docket No. 17, Att. 1) (emphasis added); (2) Plaintiff allegedly told his direct supervisor, Denise Metz, "that he hurt his shoulder at work *the previous week* [and] that it had been hurting for several days," *id*. at ¶ 12 (emphasis added); and (3) Bill Highsmith, the Plant Manager, and he, Mr. Standerfer, determined that "because Mr. Prado was a probationary employee and because he had intentionally failed to report a perceived workplace injury in violation of CWPD's rules, he should be discharged," *id*. at ¶ 15.  In addition, as relates to the time his condition was first manifested, Plaintiff signed a statement on October 25, 2004, saying he first became

uncomfortable Wednesday, October 20, 2004, and his shoulder was aching Friday, October 22, 2004. *Oct. 25, 2004, Statement*, *Exhibit C to Standerfer Affidavit*, p. 10 (Docket No. 17, Att. 1). Moreover, the Workers Compensation First Report of Injury or Illnesses form Mr. Waggener prepared on October 25, 2004, and signed by Plaintiff, reports that the "Date of Injury or Illness" was October 20, 2004, and that the "Time Occurred" was 12:00 PM, i.e., during the work day on Wednesday. *Workers Compensation - First Report of Injury or Illness Form*, *Exhibit A to Plaintiff's Motion to Amend*, p. 7 (Docket No. 15).

Plaintiff does not dispute that Defendant terminated Plaintiff's employment on October 27, 2004, and that the reason given was that Plaintiff had "intentionally failed to report a perceived workplace injury in violation of CWPD's rules." *See Standerfer Affidavit*, ¶¶ 15–16 (Docket No. 17, Att. 1); *see also Plaintiff's Motion to Amend*, p. 2 (Docket No. 15). Further, Plaintiff has not pointed to any evidence, nor has the Court found evidence in the record, of Defendant ever having asserted any other reason for the termination.

For purposes of the pending motion, there is evidence in the record to support Plaintiff's contention that, at the time of his termination, Defendant did not have a sufficient basis to believe Plaintiff had suffered an on-the-job injury or that he had failed to immediately report an on-the-job injury, and so a jury might infer that firing Plaintiff allegedly for violating the immediate-reporting rule was a pretext. To support his position, Plaintiff points to the Workers Compensation Form, on which the question "Did Injury/Illness Exposure Occur on Employer's Premises?" was answered with "Unknown" and which notes that Plaintiff had "stated that nothing particular happened; didn't feel anything or pull anything heavy." *Workers Compensation - First Report of Injury or Illness Form*, *Exhibit A to Plaintiff's Motion to Amend*, p. 7 (Docket No. 15). This form, Plaintiff argues, but without placing supporting evidence in the

record, is key to what was actually in Plaintiff's mind, and also known by Defendant, at the time of the termination and is better evidence than affidavits written a substantial amount of time after the fact.

Weighing all of the evidence, including the two previously-noted statements on the Workers Compensation form, and the affidavits presented by Defendant, Plaintiff's October 25, 2004, written statement, and other indications on the workers compensation form, it is not reasonably likely that Plaintiff can prove by clear and convincing evidence that Defendant terminated Plaintiff's employment because he filed a workers compensation claim.

**B.      Termination for Violating a Workplace Rule that Was Not Actually Violated**

Plaintiff also contends that he did not actually violate the immediate-reporting rule because he did not have an on-the-job injury and, therefore, had no injury to fail to immediately report.  *Plaintiff's Motion to Amend*, p. 4 (Docket No. 15).

As to this contention, the parties do not dispute that the soreness Plaintiff complained of on October 25, 2004, turned out to be due to a non-work-related disc extrusion.  *See Standerfer Affidavit*, ¶ 17 (Docket No. 17, Att. 1); *Nov. 16, 2004, Greggain Notes*, *Exhibit A to Stromberg Affidavit*, p. 5 (Docket No. 17, Att. 2); *Email from D. Greggain to D. Waggener*, *Exhibit D to Plaintiff's Motion to Amend*, p. 16 (Docket No. 15).  Even so, the issue at this time in regard to the Motion to Amend is not whether Plaintiff in fact violated Defendant's rules to report an injury, but rather, whether Defendant had a factual basis at the time for terminating Plaintiff's employment.

In light of the evidence weighed and considered in Part A above, it is not reasonably likely that Plaintiff can prove by clear and convincing evidence that Defendant did not believe

Plaintiff had violated a workplace rule, or that Defendant acted with an extremely harmful state of mind when terminating Plaintiff's employment for that reason at that time.

**C.**   **Not Rehiring Plaintiff After Learning He Had Not Suffered an On-the-Job Injury**

Finally, Plaintiff contends that by "steadfastly" refusing to rehire Plaintiff after learning that his injury was not work related, Defendant acted oppressively, maliciously, or outrageously. *See Plaintiff's Motion to Amend*, p. 5 (Docket No. 15).  Plaintiff contends that a jury could infer that Defendant acted in an extremely harmful state of mind or in extreme deviation from reasonable standards because it did not rehire Plaintiff after learning that the injury at issue was not work related and after Defendant's own referral physician asked that Plaintiff be reinstated, *see Email from D. Greggain to D. Waggener*, *Exhibit D to Plaintiff's Motion to Amend*, p. 16 (Docket No. 15) (asking that CWPD reconsider the decision to terminate Plaintiff).  It is not reasonably likely that Plaintiff will be able to prove by clear and convincing evidence at trial that Defendant's decision not to rehire Plaintiff was made in an extremely harmful state of mind or in extreme deviation from reasonable standards.

**D.**   **Conclusion**

After carefully weighing the entire record, including the evidence and argument of counsel presented at the hearing on April 24, 2006, the Court concludes that Plaintiff has not established a reasonable likelihood of proving facts at trial to support an award of punitive damages.  Accordingly, Plaintiff's motion to amend to assert a claim for punitive damages is denied.

## III.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion for

Leave to Amend Complaint (Docket No. 15) is DENIED.



DATED:  **May 1, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**ORDER -13-**