## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

JOSEPH PRADO,            )

                          )

        Plaintiff,        )      Case No. CV 05-256-C-LMB

                          )

v.                       )      **MEMORANDUM DECISION**

                          )      **AND ORDER**

POTLATCH CORPORATION,   )

                          )

        Defendant.    )

_____)

      Currently pending before the Court is Defendant's Motion for Summary Judgment

(Docket No. 31). Having carefully reviewed the record, considered oral arguments, and

otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## BACKGROUND

      On September 1, 2004, Potlatch Corporation ("Defendant") hired Joseph Prado

("Plaintiff") as an hourly employee in its Clearwater Wood Products Division ("CWPD").

*Standerfer Affidavit*, ¶¶ 2, 10 (Docket No. 17, Att. 1). According to company policy, Plaintiff

was to be on probationary status until November 1, 2004. *Id*. at ¶ 10.

      It is Defendant's policy that "[p]robationary employees may be discharged for any non-

discriminatory reason." *Article III, Hiring, Suspension & Discharge*, *Exhibit A to Standerfer*

*Affidavit*, p. 7 (Docket No. 17, Att 1). Additionally, Defendant's workplace rules state

> **Employees are required to immediately report the following to their**
> **supervisor** (or any supervisor, in the event their immediate supervisor
> cannot be located). Failure to do so may result in disciplinary action, up
> to and including termination. If you have any questions at any time,

STOP and get a supervisor.
- Near misses
- Incidents
- Accidents
- Unsafe equipment
- Unsafe work areas
- Unsafe machinery
- Unsafe tools or other equipment

*Clearwater Wood Products Hourly Bargaining Unit Employee Handbook*, *Exhibit B to Standerfer Affidavit*, p. 8 (Docket No. 17, Att. 1).

On Monday, October 25, 2004, Plaintiff, who was scheduled to work at CWPD, called a supervisor, Dave Vallient, and reportedly told him that he had hurt his arm at work the previous week and would not be coming in.  *Standerfer Affidavit*, ¶ 11 (Docket No. 17, Att. 1).  Later that day, Plaintiff met with Denise Metz, his direct supervisor, and, according to Dan Standerfer, personnel manager for CWPD, Plaintiff told her that he had hurt his shoulder at work the previous week, that it had been hurting for several days, and that he took ibuprofen and thought it would improve.  *Id*. at ¶ 12.  Ms. Metz then reportedly asked Plaintiff why he had not immediately reported the problem, and Plaintiff explained he had not reported it sooner because he thought his shoulder would get better over the weekend.  *Id*.

The same day, at Defendant's direction and request, Plaintiff signed the following statement:

> Wed. afternoon, after lunch sometime, worked # 12, # 14 & bundling on # 7 maybe, started to be somewhat uncomfortab[le.] Did not bother me to move.  Took Ibuprofin [sic] Friday before I came to work and a couple during work, kept moving it around.  Friday after work it would not quit aching and noticed that I could not squeeze my hand.  I thought it would quit hurting over the weekend.

*Oct. 25, 2004, Statement*, *Exhibit C to Standerfer Affidavit*, p. 10 (Docket No. 17, Att. 1).

**MEMORANDUM DECISION AND ORDER -2-**

Also on Monday, October 25, 2004, a Workers Compensation First Report of Injury or Illness form was completed by Dave Waggener, the CWPD Safety Coordinator.  *Standerfer Affidavit*, ¶ 14 (Docket No. 17, Att. 1).  The worker's compensation form indicates, in regard to the "occurrence," that the "Date of Injury or Illness" was October 20, 2004, and that the "Time Occurred" was 12:00 PM.  *Workers Compensation—First Report of Injury or Illness Form*, *Exhibit B to Nagy Declaration*, p. 11 (Docket No. 34, Att. 1).  However, where the form asks "Did Injury/Illness Exposure Occur on Employer's Premises?" the answer noted is "Unknown." *Id*.  The form also notes that Plaintiff had "stated that nothing particular happened; didn't feel anything or pull anything heavy."  *Id*.

Plaintiff was referred to Donald J. Greggain, M.D., by Defendant.  Dr. Greggain's notes report that Plaintiff's chief complaint was right shoulder or elbow pain "that started bothering him since starting work in early Sept.  Now much worse since Friday."  *Oct. 26, 2004, Greggain Notes*, *Exhibit A to Stromberg Affidavit*, p. 3 (Docket No. 17, Att. 2).  Dr. Greggain also noted that Plaintiff "[d]oes not recall any injury or specific time when the pain was aggravated, just generally worse as time and work went on."  *Id*.

On October 27, 2004, Plaintiff was discharged.  *Standerfer Affidavit*, ¶ 16 (Docket No. 17, Att. 1).  Reportedly, Bill Highsmith, the Plant Manager, and Dan Standerfer, the Personnel Manager for CWPD, had determined that "because Mr. Prado was a probationary employee and because he had intentionally failed to report a perceived workplace injury in violation of CWPD's rules, he should be discharged."  *Id*. at ¶ 15; *Highsmith Affidavit*, ¶ 15 (Docket No. 31, Att. 2).  Plaintiff had not received negative employment reviews prior to his firing.  *See Clearwater Lumber Evaluations*, *Exhibit A to Nagy Declaration*, pp. 4–10 (Docket No. 34, Att. 1).

**MEMORANDUM DECISION AND ORDER -3-**

Two weeks after Plaintiff's discharge, Dr. Greggain informed Defendant that Plaintiff's newly-diagnosed disc extrusion at C5-6 was not a work-related injury. *Standerfer Affidavit*, ¶ 17 (Docket No. 17, Att. 1); *Nov. 16, 2004, Greggain Notes*, *Exhibit A to Stromberg Affidavit*, p. 5 (Docket No. 17, Att. 2). Dr. Greggain asked Defendant to reconsider its decision to terminate Plaintiff's employment. *Email from Greggain to Waggener*, *Exhibit C to Nagy Declaration*, p. 12 (Docket No. 34, Att. 1). Similar appeals were made by Plaintiff's counsel. *Jan. 26, 2005, Letter from Nagy to Standerfer*, *Exhibit D to Nagy Declaration*, pp. 13–14 (Docket No. 34, Att. 1); *Feb. 14, 2005, Letter from Nagy to McNichols*, *Exhibit F to Nagy Declaration*, pp. 16–17 (Docket No. 34, Att. 1). Notwithstanding all the requests, Defendant did not reinstate Plaintiff, asserting that "Potlatch was fully justified in discharging" him. *Feb. 23, 2005, Letter from McNichols to Nagy*, *Exhibit G to Nagy Declaration*, p. 18 (Docket No. 34, Att. 1).

On May 20, 2005, Plaintiff filed the instant action in state court, claiming that Defendant had wrongfully terminated him, had breached an implied contract, and had breached the covenant of good faith and fair dealing. *Verified Complaint*, pp. 6–12 (Docket No. 1). Plaintiff alleges the reason Defendant gave for firing him, i.e., that Plaintiff had failed to immediately report a perceived on-the-job injury, was a pretext. *See id*. at ¶ 14. Plaintiff asserts that he was actually fired because he reported a possible on-the-job injury and filed for worker's compensation benefits, and that, by firing him for that reason, Defendant violated public policy. *Id*.

On June 27, 2005, Defendant filed a notice of removal to federal district court. *Notice of Removal*, p. 1 (Docket No. 1). Defendant now seeks summary judgment on all claims. *Defendant's Motion for Summary Judgment* (Docket No. 31).

**MEMORANDUM DECISION AND ORDER -4-**

## II.

## MOTION FOR SUMMARY JUDGMENT

On May 24, 2006, Defendant filed its Motion for Summary Judgment (Docket No. 31), seeking judgment in its favor on all counts brought by Plaintiff, i.e., wrongful termination, breach of implied contract, and breach of the covenant of good faith and fair dealing.  *Id.*

## A.    Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

### 1.    Genuine Issue of Material Fact

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment.  An issue is "material" if it affects the outcome of the litigation.  *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975).  A material fact is

> one that is relevant to an element of a claim or defense and whose
> existence might affect the outcome of the suit.  The materiality of a fact is
> thus determined by the substantive law governing the claim or defense.
> Disputes over irrelevant or unnecessary facts will not preclude a grant of
> summary judgment.

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Hahn*, 523 F.2d at 464 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253,

289 (1968)).  Accordingly, "[a] mere scintilla of evidence supporting the non-moving party's

position is insufficient; there must be evidence on which a jury could reasonably find for the

nonmoving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Likewise, "mere allegation and

speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima*

*Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citing *Witherow v. Paff*, 52 F.3d 264, 266

(9th Cir. 1995)).  Further, because factual disputes are to be resolved at trial, in ruling on

summary judgment motions, the Court does not resolve conflicting evidence with respect to

disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc.*, 809

F.2d at 630.  Moreover, all inferences must be drawn in the light most favorable to the

nonmoving party. *Id*. at 631.

> **2.   Moving and Nonmoving Parties' Burdens**

The initial burden is on the moving party to show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v.*

*Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c).  If the moving party

meets its initial burden, the nonmoving party must "produce 'specific facts showing that there

remains a genuine factual issue for trial' and evidence 'significantly probative' as to any

[material] fact claimed to be disputed." *Steckl*, 703 F.2d at 393 (quoting *Ruffin v. County of L.A.*,

607 F.2d 1276, 1280 (9th Cir. 1979)).  In addition, the nonmoving party must make a showing

sufficient to establish the existence of an element that is essential to the party's case and upon

which the party will bear the burden of proof at trial; otherwise, summary judgment is required.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)  If the nonmoving party fails to make such a

showing on any essential element of the nonmoving party's case, "there can be 'no genuine issue

**MEMORANDUM DECISION AND ORDER -6-**

as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also* Fed.

R. Civ. P. 56(e).[1]  In order to withstand a motion for summary judgment, a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact
> with respect to any element for which it bears the burden of proof; (2)
> must show that there is an issue that may reasonably be resolved in favor
> of either party; and (3) must come forward with more persuasive evidence
> than would otherwise be necessary when the factual context makes the
> non-moving party's claim implausible.

*British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir.

1989) (citation omitted).

In recent years, the Supreme Court, "by clarifying what the non-moving party must do to

withstand a motion for summary judgment, has increased the utility of summary judgment."

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.

1987).  Therefore, "[n]o longer can it be argued that any disagreement about a material issue of

fact precludes the use of summary judgment."  *Id.*  Nonetheless, "if a rational trier of fact might

resolve the issue in favor of the nonmoving party, summary judgment must be denied."  *T.W.*

*Elec. Serv., Inc.*, 809 F.2d at 631; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

(holding a motion for summary judgment must be denied when the "evidence is such that a

reasonable jury could return a verdict for the nonmoving party").

---

[1] Rule 56(e) states that, in responding to a motion for summary judgment,

> an adverse party may not rest upon the mere allegations or denials of the adverse party's
> pleading, but the adverse party's response, by affidavits or as otherwise provided in this
> rule, must set forth specific facts showing that there is a genuine issue for trial.  If the
> adverse party does not so respond, summary judgment, if appropriate, shall be entered
> against the adverse party.

Fed. R. Civ. P. 56(e).

**MEMORANDUM DECISION AND ORDER -7-**

**B.**     **Wrongful Termination**

Generally, in the absence of any agreement between an employer and employee limiting the employer's or employee's right to terminate the employment contract at will, either party to the employment contract may terminate the relationship at any time and for any reason without incurring liability.  *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 666, 799 P.2d 70, 72 (1990). However, the public policy exception to this employment-at-will doctrine limits the employer's right to discharge an employee without cause when the discharge would violate public policy. *Crea v. FMC Corp.*, 135 Idaho 175, 178, 16 P.3d 272, 275 (2000).  Pursuant to this exception, discharging an employee for filing a worker's compensation claim constitutes wrongful termination.  *See Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 334, 563 P.2d 54, 58 (1977) (listing cases illustrating the public-policy exception to the employment-at-will doctrine, including *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973), in which the plaintiff was fired for reporting an injury to her arm so she could file for workmen's compensation, which the Indiana court held to be in clear contravention of public policy); *see also Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 208, 61 P.3d 557, 565 (2002) ("This Court has also indicated that the public policy exception would be applicable if an employee were discharged, for example for refusing to date her supervisor, for filing a worker's compensation claim, or for serving on jury duty.") (citing *Sorensen*, 118 Idaho at 668, 799 P.2d at 72).

Plaintiff claims Defendant discharged him because he filed a worker's compensation claim; thus, Plaintiff alleges he was wrongfully discharged.  *See Plaintiff's Response to Motion for Summary Judgment*, p. 5 (Docket No. 34).  In moving for summary judgment on this claim, Defendant argues that Plaintiff "has no evidence to support his claim that he was discharged in

retaliation for filing a worker's compensation claim." *Defendant's Memorandum in Support of Motion for Summary Judgment*, pp. 11–12 (Docket No. 31, Att. 1).

In this case, the material fact at issue is the reason Defendant fired Plaintiff. That this fact is disputed does not necessarily preclude summary judgment. *See Cal. Architectural Bldg. Prods., Inc.*, 818 F.2d at 1468. Rather, to withstand Defendant's Motion for Summary Judgment, Plaintiff must produce sufficient evidence (i.e., more than a mere scintilla of evidence and more than mere allegation and speculation, *Rivera*, 395 F.3d at 1146; *Nelson*, 83 F.3d at 1081–82) supporting his claim that the reason he was fired was because he filed a worker's compensation claim, such that a rational trier of fact could reasonably find in his favor.

To support his claim that Defendant fired him for filing a worker's compensation claim, Plaintiff points to the following evidence:

1. "The Plaintiff performed his job well up until the date of his termination." *Plaintiff's Response to Motion for Summary Judgment*, p. 9 (Docket No. 34); *see also Clearwater Lumber Evaluations*, *Exhibit A to Nagy Declaration*, pp. 4–10 (Docket No. 34, Att. 1) (illustrating that Plaintiff had not received negative employment reviews prior to his firing).

2. "A Worker's Compensation—First Report of Injury or Illness form was completed on his behalf by his supervisor indicating that it is 'unknown' whether the 'injury/illness' occurred on the employer's premises and that 'nothing particular happened', showing that he was uncertain whether an on-the-job injury had in fact occurred." *Plaintiff's Response to Motion for Summary Judgment*, p. 9 (Docket No. 34); *Workers Compensation Form*, *Exhibit B to Nagy Declaration*, p. 11 (Docket No. 34, Att. 1).

**MEMORANDUM DECISION AND ORDER -9-**

3. "The Plaintiff was terminated immediately following the filing of the Worker's

     Compensation claim for the stated reason that he failed to timely report an on-the-job

     injury." *Plaintiff's Response to Motion for Summary Judgment*, p. 9 (Docket No. 34); *see*

     *also Highsmith Affidavit*, ¶¶ 15–16 (Docket No. 31, Att. 2).

4. "The Plaintiff did not in fact suffer an on-the-job injury." *Plaintiff's Response to Motion*

     *for Summary Judgment*, p. 9 (Docket No. 34); *E-Mail from Greggain to Waggener*,

     *Exhibit C to Nagy Declaration*, p. 12 (Docket No. 34, Att. 1).

5. "The Defendant has never been able to produce a workplace rule that the Plaintiff has

     violated." *Plaintiff's Response to Motion for Summary Judgment*, p. 9 (Docket No. 34).

6. "The Defendant steadfastly failed and refused to reinstate the Plaintiff even after it was

     pointed out that the Plaintiff had not suffered an on-the-job injury." *Id.*; *see also Feb. 11,*

     *2005, Letter from McNichols to Nagy*, *Exhibit E to Nagy Declaration*, p. 15 (Docket No.

     34, Att. 1); *Feb. 23, 2005, Letter from McNichols to Nagy*, *Exhibit G to Nagy*

     *Declaration*, p. 18 (Docket No. 34, Att. 1).

7. A document produced by Defendant indicates that at least one other Lewiston-based,

     probationary employee did not immediately report an on-the-job injury, but was not fired.

     *Plaintiff's Response to Motion for Summary Judgment*, p. 10 (Docket No. 34); *State of*

     *Idaho Workers Compensation Form*, *Exhibit I to Nagy Declaration*, p. 29 (Docket No.

     34, Att. 1) (presenting a worker's compensation form of a probationary employee of

     Potlatch IPPD indicating an injury occurring July 13, 2003, with a report date of July 14,

     2003).

Relying on these facts Plaintiff argues that "[l]ooking at these facts in a light most favorable to

the Plaintiff, a reasonable jury could certainly determine that the Plaintiff was terminated in

violation of public policy because he filed a worker's compensation claim." *Plaintiff's Response to Motion for Summary Judgment*, p. 10 (Docket No. 34).

Although it is tempting to do so, particularly with circumstances such as these, the Court cannot look at this type of situation retroactively with the benefit of hindsight, but must consider only the circumstances existing at the time of an alleged wrongful termination. Subsequent information cannot be considered. In this case, looking at Plaintiff's evidence, even construing it in the light most favorable for Plaintiff, the above-referenced evidence, at most, amounts to speculation and conjecture that the reason Plaintiff was fired was because he filed a worker's compensation claim and not because Defendant believed Plaintiff violated a workplace rule. To the contrary, as will be discussed below, I am satisfied that Plaintiff was not terminated because he filed a workers compensation claim.

First, while the fact that Plaintiff had not been disciplined prior to termination supports a conclusion that the reason Plaintiff was fired was not for something occurring prior to the immediate time in question, it does not support a conclusion that Plaintiff was fired because he filed a worker's compensation claim or that Defendant did not believe, at the time of the firing, that Plaintiff had violated a workplace rule.

Second, the fact that the worker's compensation form indicated there were unknowns as to whether the injury occurred on the employer's premises and as to how the injury happened, at best, may support an inference that Defendant did not believe, at the time of the firing, that Plaintiff's injury had been suffered at work and that, therefore, Defendant did not actually believe that Plaintiff had violated a workplace rule by not immediately reporting the injury. More likely, because the "First Report of Injury or Illness" form indicates a date of injury and time of injury as well as a description of how Plaintiff felt at the time, the "unknown" as to

**MEMORANDUM DECISION AND ORDER -11-**

whether the injury occurred on Defendant's premises shows that while Defendant believed Plaintiff had suffered a workplace injury, Defendant was unclear as to some of the circumstances regarding that injury.  Still, taking all inferences in a light most favorable to Plaintiff, the second fact constitutes evidence supporting Plaintiff's position.

Third, the fact that Plaintiff was fired shortly after he filed the worker's compensation claim also provides some support for Plaintiff's contention that the worker's compensation claim formed the basis for the termination.  After all, Defendant could not possibly have based the decision to terminate Plaintiff's employment on his filing a worker's compensation claim unless Plaintiff filed for worker's compensation prior to the termination.  However, the fact that one event proceeds another does not mean that the second event was caused by or due to the first event.  Thus, at best, this third piece of evidence leads merely to speculation or an allegation that the filing of the claim was the reason for the later termination.

Fourth, the fact that Plaintiff did not suffer an on-the-job injury does not support a finding that Defendant did not believe, at the time of firing, that Plaintiff had violated a workplace rule by failing to immediately report a perceived on-the-job injury.  After all, the fact that the injury was not work related was not learned until several weeks after the termination. *See Standerfer Affidavit*, ¶ 17 (Docket No. 17, Att. 1); *Nov. 16, 2004, Greggain Notes*, *Exhibit A to Stromberg Affidavit*, p. 5 (Docket No. 17, Att. 2).  Accordingly, this evidence has no relevance as to what was in Defendant's mind at the time of the termination.

Fifth, that Defendant, allegedly, has not produced a workplace rule that Plaintiff has violated does not support a conclusion that Defendant did not reasonably *believe*, at the time of the termination, that Plaintiff violated a workplace rule.  More specifically, Defendant contends that Plaintiff violated the following workplace rule: "It is a requirement that [employees] report

**MEMORANDUM DECISION AND ORDER -12-**

all injuries, no matter how small, immediately." *Defendant's Memorandum in Support of Motion for Summary Judgment*, p. 5 (Docket No. 31, Att. 1).  Defendant interprets this rule to require that employees immediately report all perceived on-the-job injuries, regardless of whether an on-the-job injury, in fact, occurred.  *See Highsmith Affidavit*, ¶ 15 (Docket No. 31, Att. 2).  Plaintiff, on the other hand, contends that because he did not, in fact, suffer an on-the-job injury, he did not violate the rule by not immediately reporting what he allegedly perceived as an on-the-job injury.  *See Plaintiff's Response to Motion for Summary Judgment*, p. 9 (Docket No. 34).  Thus, while there are genuine issues as to whether Plaintiff violated a workplace rule and as to whether Defendant correctly interpreted its injury-reporting rule, such issues are not material.  Rather, the material issues are whether Defendant, when it fired Plaintiff, reasonably *believed* Plaintiff had violated a workplace rule and whether this belief was the basis for Plaintiff's termination.

Sixth, the fact that Defendant refuses to reinstate Plaintiff does not provide any evidence as to the reason Defendant terminated Plaintiff's employment in the first place.

Seventh, that at least one other employee did not immediately report an injury, yet was not fired, does not support Plaintiff's position because this "other employee" was an employee of IPPD, the Idaho Pulp and Paperboard Division, not a CWPD employee.  *See State of Idaho Workers Compensation Form*, *Exhibit I to Nagy Declaration*, p. 29 (Docket No. 34, Att. 1).  As Defendant explained, "CWPD personnel decisions are made separately and independent of personnel decisions made by Potlatch's other divisions."  *Highsmith Affidavit*, ¶ 3 (Docket No. 31, Att. 2).[2]  Accordingly, the fact that another division of Potlatch Corporation decided not to terminate the employment of one of *its* probationary employees, after he or she did not

---

[2] Plaintiff has not disputed this fact.

**MEMORANDUM DECISION AND ORDER -13-**

immediately report an on-the-job injury, does not support a contention that those in CWPD, a separate and independent division, at least to the extent hiring and firing decisions are concerned, were being less than completely honest when they stated that the reason they terminated Plaintiff's employment was the failure to immediately report a perceived on-the-job injury.

Having considered all of Plaintiff's evidence, the only evidence supporting Plaintiff's contention that Defendant fired him because he filed a worker's compensation claim and not because Defendant believed Plaintiff had violated a workplace rule, is (A) the fact that Defendant listed "unknown" on the worker's compensation form as to whether the injury occurred on the Defendant's premises and (B) the fact that Plaintiff was fired shortly after filing the worker's compensation claim.  Plaintiff's supportive evidence really amounts to a mere scintilla of evidence leading to only speculation based upon an unsupported allegation that Plaintiff was fired for filing the worker's compensation claim.  This is not sufficient to successfully survive summary judgment.  *Rivera*, 395 F.3d at 1146.[3]  Accordingly, these two pieces of supportive evidence do not constitute evidence from which a rational trier of fact could reasonably find in Plaintiff's favor; thus, Defendant's motion for summary judgment as to the wrongful termination claim is granted.

---

[3] In the interest of reviewing all the evidence on the record, the Court takes note of the following significant pieces of evidence:  First, all evidence supports a conclusion that Defendant has consistently and invariably maintained that the reason it discharged Plaintiff was because he violated a workplace rule by failing to immediately report a perceived on-the-job injury.  *See, e.g.*, *Highsmith Affidavit*, ¶ 15 (Docket No. 31, Att. 2); *Standerfer Affidavit*, ¶ 15 (Docket No. 17, Att. 1).  Second, when asked, at his deposition, "Do you believe you were fired in retaliation for filing a worker's compensation claim?" Plaintiff answered, "I'm not sure what I believe.  It seems like they fired me for filing a claim, but they claim I didn't report an injury."  *Prado Deposition*, *Attachment to Stromberg Affidavit*, p. 13 (Docket No. 31, Att. 3).  As a follow up question, Plaintiff was asked "Do you have any reason to believe that what they are telling you is not true?" to which Plaintiff answered "No."  *Id.*  Third, in his Verified Complaint, Plaintiff stated that on the morning of October 25, 2004, "Plaintiff concluded that the pain he was experiencing was likely the result of an on-the-job injury at his employment with the Defendant."  *Verified Complaint*, ¶ 5 (Docket No. 1).

**MEMORANDUM DECISION AND ORDER -14-**

While I am genuinely sympathetic and feel a great deal of empathy for Plaintiff losing his job under these circumstances, he was a probationary employee at the time of his termination and everything reasonably pointed at that time to a failure on his part to timely report an on-the-job injury that occurred the prior week.  It seems to me that a reasonable thing that Defendant could have done was reinstate Plaintiff as the treating physician suggested; however, Defendant had every reasonable basis to conclude on October 27, 2004, that a failure to report occurred, and it was within its legal rights to terminate Plaintiff's probationary employment.  Under the circumstances existing at the time, Plaintiff's termination was reasonably based on his failure to report what even he assumed at the time was an injury that occurred while at work the prior week. *See Verified Complaint*, ¶ 5 (Docket No. 1).

At the very least, although there was not an event or accident that appeared to have caused the physical problems, Plaintiff was having such severe symptoms that he was self-medicating, suffered pain to the extent that he could not close his hand the prior week, and experienced other symptoms that should have been reported.  Under these circumstances, there is no question, from a legal standpoint, that Plaintiff failed to report his condition as allegedly required by Defendant's workplace rules.  Accordingly, his termination on October 27, 2004, was reasonable, was not a violation of public policy, and did not constitute wrongful termination.

## C.      **Breach of Implied Contract and Covenant of Good Faith and Fair Dealing**

Aside from wrongful termination, Plaintiff alleges Defendant breached an implied contract and breached the covenant of good faith and fair dealing by retaliating against him for filing a worker's compensation claim, for failing to reinstate Plaintiff to his position of employment, and by terminating Plaintiff's employment "for violating a rule that he never violated." *Plaintiff's Response to Motion for Summary Judgment*, pp. 11–12 (Docket No. 34).

**MEMORANDUM DECISION AND ORDER -15-**

1.      **Breach of Implied Contract**

As Plaintiff correctly points out, "an employee handbook can constitute an element of the

employment contract." *Id*. at p. 12 (quoting *Watson v. Idaho Falls Consol. Hosps., Inc.*, 111

Idaho 44, 47, 720 P.2d 632, 635).  By relying on *Watson*, Plaintiff implies that Defendant

violated a term or terms set forth in the employee handbook used at CWPD.

a.      **Retaliatory Termination**

One element of Plaintiff's employment-at-will agreement with Defendant was that

Defendant could not terminate Plaintiff in violation of public policy, e.g., by firing Plaintiff for

filing a worker's compensation claim.  However, as previously discussed, Plaintiff has produced

only a mere scintilla of evidence that would support a conclusion that Plaintiff was fired in

violation of public policy and not, as Defendant contends, because Defendant believed that

Plaintiff violated a workplace rule.  To the contrary, I am convinced that Plaintiff was not

terminated because he filed a workers compensation claim.  I am likewise satisfied Plaintiff was

terminated because he failed to give his employer notice of his physical symptoms arising during

the work week in which they arose.  Accordingly, the "retaliatory termination" argument in

regard to the breach-of-implied-contract claim is likewise not supported by evidence sufficient to

withstand summary judgment.

b.      **Terminating Plaintiff for Violating a Nonexistent Workplace Rule
         and Failing to Reinstate Plaintiff**

Plaintiff has not pointed the Court to anything in the CWPD employee handbook, or

other applicable handbook, that would suggest that Plaintiff's employment with Defendant was

anything other than at-will.  There is nothing in the employment handbook, or other workplace

rules, that would imply (1) that Defendant could terminate Plaintiff's employment only if

**MEMORANDUM DECISION AND ORDER -16-**

Plaintiff, in fact, violated a workplace rule or (2) that Defendant was required to rehire Plaintiff after termination for any reason.  Accordingly, Plaintiff has not provided sufficient evidence from which a trier of fact could find in his favor on the breach-of-implied-contract claim.  Thus, Defendant's motion for summary judgment as to the breach-of-implied-contract claim is granted.

### 2.     Breach of the Covenant of Good Faith and Fair Dealing

Idaho law recognizes a cause of action for breach of an implied covenant of good faith and fair dealing, which is found in all employment agreements, including employment-at-will relationships.  *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 242–43, 108 P.3d 380, 389–90 (2005).  The covenant of good faith and fair dealing is a judicially-created exception to the employment-at-will doctrine based on a contractual duty of good faith.  *Crea v. FMC Corp.*, 135 Idaho 175, 179, 16 P.3d 272, 276 (2000).  Any action that violates, nullifies, or significantly impairs any benefit or right that either party has in the employment contract, whether express or implied, is a violation of the covenant.  *Id.* (citing *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 627, 778 P.2d 744, 749 (1989)).  However, "the covenant 'does not create a duty for the employer to terminate the at-will employee only for good cause.'  The covenant simply requires that the parties perform in good faith the obligations imposed by their agreement."  *Jenkins*, 141 Idaho at 243, 108 P.3d at 390 (citation omitted) (quoting *Metcalf*, 116 Idaho at 627, 778 P.2d at 749) (citing *Thompson v. City of Idaho Falls*, 126 Idaho 587, 593, 887 P.2d 1094, 1100 (Ct. App. 1994)).

In this case, Plaintiff has not provided any evidence (e.g., a term in the CWPD handbook, workplace rule, or legal reason) to support a conclusion that Plaintiff's at-will employment had been modified to provide him with the right or benefit to be protected from termination in the absence of actually violating a workplace rule or the right to be reinstated should he be fired for

**MEMORANDUM DECISION AND ORDER -17-**

violating a rule if he did not, in fact, violate such rule.  Likewise, as for evidence that would

support a conclusion that Defendant was acting with less than good faith when it terminated

Plaintiff's employment, Plaintiff has provided really only a mere scintilla of evidence that

Plaintiff was terminated shortly after filing a worker's compensation claim and that Defendant

listed "unknown" as to whether the injury occurred on Defendant's premises.  Accordingly,

Plaintiff has not provided sufficient evidence from which a rational trier of fact could reasonably

find in his favor on this claim.  Thus, Defendant's motion for summary judgment as to the breach

of the covenant of good faith and fair dealing claim is granted.

**D.      Conclusion**

Most important, for the disposition of the instant motion, is the undeniable fact that, in

the context of an at-will employment agreement, an employer retains the right to terminate the

relationship *at any time for any reason* without incurring liability, with only narrow exceptions.

*Sorensen*, 118 Idaho at 666, 799 P.2d at 72.  Thus, while there may be a genuine issue as to

whether there was a workplace rule in effect in this case that required Plaintiff to immediately

report a *perceived* workplace injury and whether Plaintiff violated any such rule, these are not

determinative of the issues presented here.  Rather, the key material facts are whether Defendant

*believed*, at the time of terminating Plaintiff's employment, that Plaintiff had violated a

workplace rule and whether Defendant reasonably terminated Plaintiff's employment based on

that belief.  Accordingly, and because Plaintiff has come forth with only a scintilla of evidence to

support his position that Defendant fired Plaintiff because he filed a worker's compensation

claim, there is no genuine issue of material fact to be resolved on the claim Plaintiff was

wrongfully terminated.  Likewise, even when viewing the evidence in a light most favorable to

Plaintiff, the evidence in the record does not satisfy the burden required to withstand a motion

for summary judgment.  Thus, Defendant's motion is granted.

## III.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED that Defendant's Motion for

Summary Judgment (Docket No. 31) is GRANTED.



DATED:  **September 7, 2006**.

Larry M. Boyle
United States District Court

**MEMORANDUM DECISION AND ORDER -19-**